Catherine Ybarra (SBN 283360)
**SIRI & GLIMSTAD LLP**
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017
Tel: 213-297-3807
E: *cybarra@sirillp.com*

Sonjay Singh (*pro hac vice anticipated*)
**SIRI & GLIMSTAD LLP**
400 East Pratt Street
8th Floor - #16946751
Baltimore, MD 21202
Tel: (212) 532-1091
E: *ssingh@sirillp.com*

Bryan L. Bleichner (*pro hac vice anticipated*)
Philip J. Krzeski (*pro hac vice anticipated*)
**CHESTNUT CAMBRONNE PA**
100 Washington Ave S, Suite 1700
Minneapolis, MN 55401
Tel: (612) 339-7300
E: *bbleichner@chestnutcambronne.com*
E: *pkrzeski@chestnutcambronne.com*

*Attorneys for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **TERRY GAGLEARD** and **KAREN PICARDI**, individually and on behalf of all others similarly situated, | No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| **PERPLEXITY AI, INC.,** | |
| Defendant. | |

**1**
**CLASS ACTION COMPLAINT**

Plaintiffs Terry Gagleard and Karen Picardi (collectively, "Plaintiffs"), individually and on behalf of all similarly situated persons, allege the following against Defendant Perplexity AI, Inc. ("Perplexity" or "Defendant"), based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation by their counsel and review of public documents as to all other matters:

## I.   <u>INTRODUCTION</u>

1.     The artificial intelligence ("AI") boom, including the advent of large language models ("LLMs"), has disrupted the tech industry. However, this disruption has not altered the fundamentals of contract law.  When an AI company makes a promise to its customers through binding contracts, the company cannot later decide to change those promises during the life of the contract. Yet, Defendant Perplexity AI, Inc. ("Perplexity" or "Defendant") has tried to do exactly that by entering into fixed-term contracts with its customers and dramatically decreasing the services provided to those customers midway through their contractual term.

2.     Americans are increasingly moving away from traditional search engines in favor of generative AI search engines for advice and assistance on a wide range of issues. A recent survey found that 55% of American respondents now use AI instead of traditional search engines like Google.[1]

3.     Perplexity develops, owns and operates the Perplexity AI search engine available at www.perplexity.ai (the "Platform").

---

[1] Amanda Caswell, *Bad news for Google – new survey shows 55% of people are now using AI instead of search engines*, YAHOO! TECH (Sept. 3, 2025 4:58 PM), https://tech.yahoo.com/ai/articles/bad-news-google-survey-shows-205806921.html (last accessed May 13, 2026).

**2**

**CLASS ACTION COMPLAINT**

4.      Perplexity markets the Platform as a "free AI-powered answer engine for fast, trustworthy research"[2] and boasts 45 million monthly active users.[3] According to Perplexity's marketing, the Platform "uses advanced AI to search the internet in real-time, gathering insights from top-tier sources" to deliver "exactly what [users] need in an easy-to-understand, conversation tone."[4]

5.      Perplexity allows anyone to use some of its services for free. However, if users want to access many of the product's advanced features, they must pay a monthly or yearly fee. For example, Perplexity claims its Perplexity Pro plan goes "far beyond standard keyword-based searches, functioning more like a knowledgeable search assistant than a traditional search engine."[5]

6.      Perplexity offers various plans, but for each plan there is a fixed number of times per week or per month that you can use each feature.  However, Perplexity habitually disregards its promises made to its accountholders about the functionality of the Platform, choosing instead to enrich itself at their expense.

7.      As detailed below, Perplexity's breaches of its agreements with accountholders include (i) unilaterally imposing limitations on its accountholders' monthly quota of advanced search queries without any prior notice, including reducing their allowed usage of its flagship "Deep Research" feature by **99.8-percent**; and (ii) persistently processing user queries through cheaper, less

---

[2] *Getting Started*, PERPLEXITY, https://www.perplexity.ai/hub/getting-started (last accessed May 13, 2026).

[3] Naveen Kumar, *Perplexity AI Statistics 2026 – Active Users & Revenue*, DEMANDSAGE (Feb. 9, 2026), https://www.demandsage.com/perplexity-ai-statistics/ (last accessed May 13, 2026).

[4] *How does Perplexity work?*, PERPLEXITY, https://www.perplexity.ai/help-center/en/articles/10352895-how-does-perplexity-work (last accessed May 13, 2026).

[5] *What is Pro Search*, PERPLEXITY, https://www.perplexity.ai/help-center/en/articles/10352903-what-is-pro-search (last accessed May 30, 2026).

**CLASS ACTION COMPLAINT**

advanced LLMs than the model selected by the user, despite the Platform representing that it had processed the query through the model selected.

8.     Perplexity's Terms of Service ("Terms") provided no warning to Plaintiffs and Class Members that Perplexity would unilaterally disregard the representations made to them regarding their account functionalities. On the contrary, the Terms explicitly promised Perplexity users that "any changes to your subscription plan will take effect following reasonable notice to you."[6]

9.     Perplexity's disregard of its express promises to its users thus violated its own Terms of Service.

10.     As a result of Perplexity's deceptive conduct, Plaintiffs seek, on behalf of themselves and a class of similarly situated persons, to remedy these harms and assert the following statutory and common law claims against Perplexity: Breach of Contract; Breach of Express Warranty; Breach of Covenant of Good Faith and Fair Dealing; Unjust Enrichment; and violations of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1, *et seq.*, and the Massachusetts Consumer Protection Act, Mass. Gen. Laws Ann. Ch. 93A, §§ 1, *et seq.*

## II.     PARTIES

### *Plaintiff Terry Gagleard*

11.     Plaintiff Terry Gagleard is a citizen of the State of Illinois, residing in Cook County, and brings this action both in an individual capacity, and on behalf of all other similarly situated.

12.     Plaintiff Gagleard has been a Perplexity Pro accountholder from May of 2025 through present.

---

[6]     *Perplexity     Terms     of     Service*, PERPLEXITY, https://www.perplexity.ai/hub/legal/terms-of-service (last accessed May 30, 2026).

**4**

**CLASS ACTION COMPLAINT**

13. When Plaintiff Gagleard registered for his Perplexity Pro account, he formed a contract with Perplexity based on its representations regarding the Platform's features and governing Terms.

14. Perplexity's offers to (i) provide reasonable notice prior to modifying any of the features of his paid account, and (ii) allow Plaintiff Gagleard to select the LLM that produced the responses to his advanced search queries, were specific and material warranties and/or terms of Plaintiff Gagleard's contract with Perplexity.

15. Plaintiff Gagleard performed his obligations under the contract by paying his account fees.

16. Perplexity breached its contract with Mr. Gagleard and express warranties made to Mr. Gagleard by (i) severely limiting the functionality of Mr. Gagleard's Perplexity Pro account by enacting the Query Limits described herein without any prior notice, and (ii) re-routing Plaintiff Gagleard's Perplexity Pro queries through LLM models other than the model that Plaintiff Gagleard selected through the Platform interface.

***Plaintiff Karen Picardi***

17. Plaintiff Karen Picardi is a citizen of the State of Massachusetts, residing in Middlesex County, and brings this action both in an individual capacity, and on behalf of all other similarly situated.

18. Plaintiff Picardi registered for a Perplexity Pro account in or around September of 2025. Plaintiff Picardi cancelled her account in December of 2025 after noticing the degradation in the quality of responses provided by the Platform and the reduced availability of Perplexity's advanced search tools.

19. When Plaintiff Picardi registered for her Perplexity Pro account, she formed a contract with Perplexity based on its representations regarding the Platform's features and governing Terms.

**5**

**CLASS ACTION COMPLAINT**

20. Perplexity's offers to (i) provide reasonable notice prior to modifying any of the features of her paid account, and (ii) allow Plaintiff Picardi to select the LLM that produced the responses to her advanced search queries, were specific and material warranties and/or terms of Plaintiff Picardi's contract with Perplexity.

21. Plaintiff Picardi performed her obligations under the contract by paying her account fees.

22. Perplexity breached its contract with Plaintiff Picardi and express warranties made to Plaintiff Picardi by (i) severely limiting the functionality of Plaintiff Picardi's Perplexity Pro account by enacting the Query Limits described herein without any prior notice, and (ii) re-routing Plaintiff Picardi's Perplexity Pro queries through LLM models other than the model that Plaintiff Picardi selected through the Platform interface.

***Defendant Perplexity AI, Inc.***

23. Perplexity is a for-profit corporation incorporated in the State of Delaware with its principal place of business at 115 Sansome Street, Suite 900, San Francisco, in San Francisco County, California.

### III. JURISDICTION AND VENUE

24. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than 100 putative class members and minimal diversity exists because many putative class members, including Plaintiffs Gagleard and Picardi, are citizens of a different state than Perplexity. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

**CLASS ACTION COMPLAINT**

25.     This Court has general personal jurisdiction over Perplexity because Perplexity is headquartered in and maintains its principal place of business in the State of California and, specifically, within this District.

26.     Venue is proper in this District under 28 U.S.C. § 1391(a)-(d) because: Perplexity's principal place of business is located in this District; Perplexity processed Plaintiffs' and Class Members' Platform queries in this District; and Perplexity caused harm to Plaintiffs and Class Members residing in this District.

27.     **Divisional Assignment**: San Francisco is the proper division for this action pursuant to Civil L.R. 3-2(c) because Defendant's principal place of business is located in San Francisco.

## IV.    FACTUAL ALLEGATIONS

### A. THE PERPLEXITY PLATFORM.

#### i.  The Platform Leverages Large Language Models to Answer User Queries.

28.     Perplexity describes the Platform as "an answer engine built around real-time web search with inline citations on every response."[7] To use the Platform, users enter a query into the Platform's search box and the Platform then provides a written response, including in-line citations to online resources.[8]

29.     To produce these responses, Perplexity leverages leading LLMs including OpenAI's ChatGPT, Google's Gemini, Anthropic's Claude, Moonshot's Kimi, and NVIDIA's Nemotron to produce responses to the user's plain language

---

[7] *Choose Your Plan*, PERPLEXITY, https://www.perplexity.ai/pro (last accessed May 30, 2026).

[8] Mark Sullivan, *Is Perplexity AI showing us the future of search?*, FAST COMPANY (Apr. 20, 2023), www.fastcompany.com/90883562/is-perplexity-ai-showing-us-the-future-of-search (last accessed May 30, 2026).

**CLASS ACTION COMPLAINT**

query.[9] Perplexity's paid accountholders can select which LLM the Platform uses to provide a response to a given query.[10]

30.     In essence, when a user enters a query into the Platform's search box, the Platform first acts as a search engine by compiling a list of sources relevant to the question. Then, the Platform instructs an LLM to analyze the query and compose an accurate, citation-supported answer using the sources it has compiled.

### ii.  Perplexity Pro Offers Advanced Features to Accountholders.

31.     Perplexity's business model revolves around charging higher fees for increased access to more advanced search tools.

32.     As Perplexity explains, while Perplexity's "free plan limits advanced searches to a few per day and locks [users] to a single default model[,]" the Perplexity Pro Plan—currently offered at a subscription cost of $20/month or $204/year paid in advance—"unlocks more advanced searches with multi-step reasoning, access to all premium AI models, increased file uploads, and image generation capabilities."[11] The Perplexity Pro Max plan—currently offered at a subscription cost of $167/month—further increases the user's ability to use the Platform's advanced tools and provides access to the most sophisticated LLMs on the market.[12]

33.     In addition to making standard Perplexity searches, paid accountholders have access to the following advanced queries (the "Advanced Search" tools), subject to a monthly quota based on the user's account type:

---

[9] *See Perplexity Search Page*, PERPLEXITY, https://www.perplexity.ai (last accessed May 30, 2026).

[10] *Id*.

[11] *Choose Your Plan*, PERPLEXITY, https://www.perplexity.ai/pro (last accessed May 30, 2026).

[12] *Id*.

**CLASS ACTION COMPLAINT**

a) Pro Search Queries: Perplexity's Pro Search provides advanced responses to user queries. As Perplexity explains, Pro Search provides responses "devised by synthesizing information from a diverse and high-quality set of sources" that go "far beyond standard keyword-based searches, functioning more like a knowledgeable search assistant than a traditional search engine."[13] When making a Pro Search (or any other advanced search query), users can choose the LLM model that produces the response, including cutting-edge reasoning LLM models.[14]

b) Deep Research Queries: Perplexity describes "Deep Research" as a "powerful research tool" which answers users questions by "run[ning] dozens of searches, read[ing] hundreds of sources, and draw[ing] its own inferences from that material to deliver a comprehensive report."[15] When making a Perplexity Deep Research query, users can also ask Perplexity to search and reference specific resources and databases that are normally inaccessible to LLMs, such as academic publications, clinical research and FEC filings.[16]

c) Perplexity Labs Queries: Perplexity described Perplexity Labs as an advanced project creation tool able to "craft everything from reports and spreadsheets to dashboards and simple web apps — all backed by extensive research and analysis…us[ing] a suite of tools like deep web

---

[13] *What is Pro Search*, PERPLEXITY, https://www.perplexity.ai/help-center/en/articles/10352903-what-is-pro-search (last accessed May 30, 2026).
[14] *Id.*
[15] *Introduction to Perplexity Deep Research*, PERPLEXITY (Feb. 14, 2025), https://www.perplexity.ai/ja/hub/blog/introducing-perplexity-deep-research (last accessed May 30, 2026).
[16] *Id.*

**9**

**CLASS ACTION COMPLAINT**

browsing, code execution, and chart and image creation[.]"[17] Examples of projects produced by Perplexity labs include "a dashboard comparing the 5-year performance of a traditional stock portfolio versus an AI-powered portfolio" and a report summarizing the "latest papers on ozempic and analyz[ing] findings on side effects [including] charts and tables."[18]

 d) <u>Image Generation</u>: Perplexity can generate images in response to user prompts by routing queries through leading image generation models such as OpenAI's "GPT Image 1", Google's "Nano Banana", and ByteDance's "Seedream 4.5."[19]

 e) <u>File Analysis</u>: Users can upload many common filetypes, including text, code, PDFs, images, audio files and video files, and ask Perplexity to analyze, transcribe, summarize, or respond to questions regarding the file's contents.[20]

34. The Platform's Advanced Search tools, including its Deep Research and Labs tools, are its hallmark distinguishing features from other LLM products. Indeed, Perplexity advertises itself as "an answer engine built around real-time web search with inline citations on every response" in contrast to the "conversational AI chatbot[s]" offered by other LLM providers, and instructs Internet users to "[c]hoose Perplexity for research, factual accuracy, and source verification" and to

---

[17] *Introducing Perplexity Labs*, PERPLEXITY (May 29, 2025), https://www.perplexity.ai/hub/blog/introducing-perplexity-labs (last accessed May 30, 2026).

[18] *Perplexity Labs*, PERPLEXITY, https://www.perplexity.ai/labs (last accessed May 30, 2026).

[19] *Generating Images with Perplexity*, PERPLEXITY, https://www.perplexity.ai/help-center/en/articles/10354781-generating-images-with-perplexity (last accessed May 30, 2026).

[20] *File Uploads*, PERPLEXITY, https://www.perplexity.ai/help-center/en/articles/10354807-file-uploads (last accessed May 30, 2026).

**10**

**CLASS ACTION COMPLAINT**

choose other LLMs such as "ChatGPT for creative tasks and conversational interactions."[21]

## B. PERPLEXITY'S UNILATERAL CHANGES TO ITS PRODUCT FEATURES

35. Perplexity's marketing of the Perplexity Pro Plan emphasizes accountholders' ability to access the Advanced Search tools and deploy more sophisticated LLMs to process their queries. Indeed, the tagline for Perplexity Pro on Perplexity's marketing page reads: "[a]dvanced answers and top AI models."[22]

36. When Plaintiffs and Class Members registered for their Perplexity accounts, Perplexity made specific promises regarding their ability to use the Advanced Search Tools, including representing that Perplexity Pro accountholders could make an unlimited number of Pro Search queries, and up to 600 Deep Research queries every day.[23]

37. These representations were material to Plaintiffs and the Class. Yet, Perplexity failed to honor its promises.

38. In December of 2025, Perplexity significantly reduced the monthly quotas attached to each Advanced Search type allowed to its Perplexity Pro subscribers, as shown by the following table (the "Query Limits"):[24]

---

[21] *Choose Your Plan*, PERPLEXITY, https://www.perplexity.ai/pro (last accessed May 30, 2026).

[22] *Id.*

[23] *Perplexity throttles PRO subscribers without prior notice*, CONSUMER RIGHTS WIKI, www.consumerrights.wiki/w/Perplexity_throttles_PRO_subscribers_without_prior_notice (last accessed May 30, 2026); *see also* archive.is/6ykZE#selection-1277.0-1277.254 (archived post on Reddit r/Perplexity_AI forum with screenshots of Perplexity's prior query limit representations).

[24] *Id.*

**CLASS ACTION COMPLAINT**

| Feature | Pre-December 2025 Limit | Post-December 2025 Limit |
|---|---|---|
| Pro Search | Unlimited | 200/Month |
| Deep Research | 600/Day | 20/Month |
| Labs | 50/Month | 25/Month |
| Image Generation | Unlimited | 50/Month |
| File Uploads | Unlimited | 50/Week |

39. The Query Limits severely restricted Perplexity Pro users' access to core features of the Perplexity Platform, including by reducing their monthly Deep Research query allotment by over **99.8-percent**.

40. Perplexity provided no warning prior to implementing these changes. As a result, most Perplexity accountholders only learned about the new Query Limits after attempting to make an Advanced Search and being notified by the Platform that they had reached their monthly quota.[25]

[25] *See Perplexity Pro rate limits suddenly changed?*, REDDIT – R/PERPLEXITY_AI FORUM, https://www.reddit.com/r/perplexity_ai/comments/1tcvvbx/perplexity_pro_rate_limits_suddenly_changed/ (last accessed May 30, 2026) (online forum post with numerous replies from Perplexity Pro users noting that they had no prior notice of the new query limitations prior to reaching the new quota); *99.89% Reduction in Research quota over night without any formal Update*, REDDIT – R/PERPLEXITY_AI FORUM, https://www.reddit.com/r/perplexity_ai/comments/1qwhej3/9989_reduction_in_research_quota_over_night/ (last accessed May 30, 2026) (same); *Subscribed to Pro for Deep Research – they nerfed it the same week, no refund*,https://www.reddit.com/r/perplexity_ai/comments/1qxrqs9/subscribed_to_pro_for_deep_research_they_nerfed/ (last accessed May 30, 2026) (same); *What the hell ?? Now even pro is limited ???*, REDDIT – R/PERPLEXITY_AI FORUM, https://www.reddit.com/r/perplexity_ai/comments/1pm9u1b/what_the_hell_now_even_pro_is_limited/ (last accessed May 30, 2026) (same); *Need an alternative to Perplexity now that it seems to be limiting Pro users. Suggestions?*, REDDIT – R/PERPLEXITY_AI FORUM,

**12**

**CLASS ACTION COMPLAINT**

41.     Even now, six months after enacting the Query Limits, Perplexity still has not provided any explanation of these significant changes to its accountholders.

42.     Moreover, Perplexity does not provide any way for Perplexity Pro accountholders to see how many uses of each Advanced Search Tool are available to them before reaching their monthly quota, nor how many of each type of Advanced Search they have already made that month.

43.     The opaque nature of Perplexity's rollout of the Query Limits is well demonstrated by the flurry of confused discussions in online Perplexity forums after the Query Limits were enacted, such as posts reproduced below:

- Hey everyone, has anyone else seen sudden changes to the Perplexity Pro rate limits? I just got an alert saying I've hit my limit for Pro searches. I'm unable to use any more Pro searches at all. Only Basic searches via their models I believe…Is this a new rate-limit behaviour, or some kind of hidden cap (per hour/day) that isn't clearly documented?[26]

- 99.89% Reduction in Research quota over night without any formal Update…That is 99.89% reduction in Research without any formal intimation, 50% reduction in Labs what is happening. I am not renewing it next month, this is outrageous.[27]

---

https://www.reddit.com/r/perplexity_ai/comments/1qngqyy/need_an_alternative_to_perplexity_now_that_it/ (last accessed May 30, 2026) (same); *Can someone summarize the recent changes to the Pro plan for me?*, REDDIT – R/PERPLEXITY_AI FORUM, https://www.reddit.com/r/perplexity_ai/comments/1r4vq9k/can_someone_summarize_the_recent_changes_to_the/ (last accessed May 30, 2026) (same).

[25] *Id.*

[26] *Perplexity Pro rate limits suddenly changed?*, REDDIT – R/PERPLEXITY_AI FORUM, https://www.reddit.com/r/perplexity_ai/comments/1tcvvbx/perplexity_pro_rate_limits_suddenly_changed/ (last accessed May 30, 2026).

[27] *99.89% Reduction in Research quota over night without any formal Update*, REDDIT – R/PERPLEXITY_AI FORUM, https://www.reddit.com/r/perplexity_ai/comments/1qwhej3/9989_reduction_in_research_quota_over_night/ (last accessed May 30, 2026).

**13**

**CLASS ACTION COMPLAINT**

- I signed up for Perplexity Pro on Feb 4, basically just for Deep Research. Used it for a couple of days and suddenly hit a hard limit – Deep Research just stopped working for the rest of the period. Only after that I found out they had just "updated" Deep Research in early February and heavily cut the limits. I contacted support and explained that I subscribed when the limits were different, and now I'm stuck with a downgraded product in my very first month. The reply was basically: "We have a 24-hour refund window, no partial refunds ever, policy is final." "We can't change limits for individual users." So in practice: I paid, a few days later the main feature I signed up for became almost unusable, and I'm told to just live with it until the end of the month.[28]

- What the hell ?? Now even pro is limited ???... Since when does the basic models (so anything beside opus) have a limit ?? I mean, I know there is a limit but it's 600 request per 24h ! not 5 ![29]

- Well, when I try to upload a file, it's now giving me a screen to upgrade my subscription. I paid for a year of Pro (runs out in June) but with this new limitation, the service has become useless for my purposes…I contacted support and asked two questions - when will my paid service be restored, and how can I see the limitation so I can keep myself under it (essential use only). Support could not give me an answer to either question, which is totally unacceptable…This is a bait and switch to provide a level of paid service and then take it away suddenly, and not be able to even tell someone when the paid service will be restored.[30]

- They added limitations that were not there before for paid Pro users and have moved those capabilities to the higher Max tier, which costs 10x as much. This is actually a violation of their own TOS, but they are doing it anyway.[31]

---

[28] *Subscribed to Pro for Deep Research – they nerfed it the same week, no refund*, https://www.reddit.com/r/perplexity_ai/comments/1qxrqs9/subscribed_to_pro_for_deep_research_they_nerfed/ (last accessed May 30, 2026).

[29] *What the hell ?? Now even pro is limited ???*, REDDIT – R/PERPLEXITY_AI FORUM, https://www.reddit.com/r/perplexity_ai/comments/1pm9u1b/what_the_hell_now_even_pro_is_limited/ (last accessed May 30, 2026).

[30] *Need an alternative to Perplexity now that it seems to be limiting Pro users. Suggestions?*, REDDIT – R/PERPLEXITY_AI FORUM, https://www.reddit.com/r/perplexity_ai/comments/1qngqyy/need_an_alternative_to_perplexity_now_that_it/ (last accessed May 30, 2026).

[31] *Id.*

**CLASS ACTION COMPLAINT**

- Deep researches are now down to 20/month[.] Labs are down to 25/month[.] Both were 600/day just a few weeks ago. Also, we have limitations on image uploads, image generation, and related operations…I haven't seen anything official from Perplexity on the matter. Legality is questionable (at least in EU), cause lack of some prior limits (like unlimited deep research) was communicated.[32]

44.    Despite unilaterally limiting the core features of the Platform, Perplexity has not offered refunds to users who signed up for a Perplexity Pro account prior to its enactment of the Query Limits. On the contrary, Perplexity has instead refused to provide refunds even when explicitly requested by Perplexity Pro users.[33]

## C. PERPLEXITY FAILS TO PROVIDE THE SERVICES PROMISED TO THE PLATFORM'S USERS BY SURREPTITIOUSLY DISREGARDING THEIR MODEL SELECTIONS

45.    In its advertising, Perplexity claims that the Platform provides "[a]ccess to the latest AI models, post-trained for higher accuracy" and that accountholders can "switch between models with one click depending on [their] task."[34]

46.    However, despite these promises, Perplexity users have continuously reported instances of the Platform "re-routing" their search queries through a different LLM than the one selected, despite the Platform's interface claiming that the correct model had been used.

---

[32] *Can someone summarize the recent changes to the Pro plan for me?*, REDDIT – R/PERPLEXITY_AI FORUM, https://www.reddit.com/r/perplexity_ai/comments/1r4vq9k/can_someone_summarize_the_recent_changes_to_the/ (last accessed May 30, 2026).

[33] *See subscribed to Pro for Deep Research – they nerfed it the same week, no refund*, REDDIT – R/PERPLEXITY_AI FORUM, https://www.reddit.com/r/perplexity_ai/comments/1qxrqs9/subscribed_to_pro_for_deep_research_they_nerfed/ (last accessed May 30, 2026).

[34] *Choose Your Plan*, PERPLEXITY, https://www.perplexity.ai/pro (last accessed May 30, 2026).

**15**

**CLASS ACTION COMPLAINT**

47.    A user's choice of LLM model has a substantial effect on the quality of the response that the user receives. LLM intelligence is measured using various LLM "benchmarks"—standardized tests which evaluate models based on, e.g., the accuracy of factual information provided in response to a specific set of queries, ability to apply logical reasoning to a logic puzzle, and ability to contextualize information and apply inference.[35]

48.    The Artificial Analysis Intelligence Index is a popular comparative measure of model capability that scores LLMs based on their aggregate performance in various leading benchmarks. Based on those benchmarks, the Artificial Analysis Intelligence Index rates Claude Opus 4.8, the most powerful model available to Perplexity users, as **four times more intelligent** than Perplexity's in-house model, Sonar.[36]

49.    As a result of the significant computational differences between the various LLMs offered, when the Platform re-routes a user's query to a different model than the user selected, the user receives a far inferior answer than they would if their model selection had been honored both in terms of the accuracy of the information presented, and the depth of analysis performed.

50.    The Platform's failure to inform the user that a different model was used than the model selected further compounds the problems caused by model re-routing. By falsely claiming that the correct model was used after re-routing the user's query, the Platform deprives the user of the opportunity to re-run the query through the correct model, or to scrutinize the answer given by the inferior model more carefully.

---

[35] *30 LLM evaluation benchmarks and how they work*, EVIDENTLYAI, https://www.evidentlyai.com/llm-guide/llm-benchmarks (last accessed May 30, 2026).

[36] *See Comparison of Models*, ARTIFICIAL ANALYSIS, https://artificialanalysis.ai/ (last accessed May 30, 2026).

**16**

**CLASS ACTION COMPLAINT**

51. On May 2, 2025, Perplexity CEO Aravind Srinivas responded to widespread user outrage by acknowledging the model re-routing issue in an online Perplexity user forum post wherein he assured users that the "issue is fixed," and promised to "ensure missteps like this don't persist" and to "provide more transparency regarding these issues going forward[.]"[37]

52. Despite these promises, the Platform's model re-routing continued. After another surge of user complaints, Mr. Srinivas was forced to acknowledge in another forum post on November 7, 2025 that the Platform's model re-routing had continued despite his past assurances.[38] Yet again, Mr. Srinivas promised in this second post that the problem was "fixed" and that Perplexity would provide "increase[d] transparency." [39]

53. Once more, Mr. Srinivas's statements proved to be false. The model re-routing issue was not (nor has it ever been) fixed. Indeed, Perplexity users continue to report surreptitious model re-routing, including through online posts such as those reproduced below:

- I added a custom instruction forcing Perplexity to declare which model it's using at the start of every response. The results? Eye-opening. In 4 months, it has NEVER used Sonnet 4.5 with reasoning, even when I explicitly selected it for difficult coding questions. I've had to repeatedly beg the system to actually use the higher models I chose. Eventually it would switch to Opus 4, but only after multiple attempts…What really frustrates me is the constant marketing about ChatGPT 5.2 access and

---

[37] *Sonnet 3.7 issue is fixed. Explanation below.*, REDDIT – R/PERPLEXITY_AI FORUM, https://www.reddit.com/r/perplexity_ai/comments/1kd81e8/sonnet_37_issue_is_fixed_explanation_below/ (last accessed May 30, 2026).
[38] *Update on Model Clarity*, REDDIT – R/PERPLEXITY_AI FORUM, www.reddit.com/r/perplexity_ai/comments/1orar1a/update_on_model_clarity/ (last accessed May 30, 2026).
[39] *Id.*

**CLASS ACTION COMPLAINT**

advanced capabilities. But access for whom exactly? It feels like they're deliberately choosing cheaper models to cut costs, even for Pro subscribers who are paying specifically for access to better models.[40]

- [I]t was a bit bipolar yesterday. I selected GPT5.1 and at the end of my prompt, I asked for model confirmation. It used GPT4.2. I ran the same prompt a few hours later and wanted to see which ai model was used and it said OpenAI o3-mini.[41]

- All my search and requests default to their base model that is fast, but nowhere near as good as other models. Tried logging out, using different devices but it does the same thing. This has been ongoing for a few days now. Is their AI model selection completely broken?[42]

- Perplexity is STILL DELIBERATELY SCAMMING AND REROUTING users to other models… Perplexity, your silent model rerouting behavior feels like a bait-and-switch and a fundamental breach of trust, especially for anyone doing serious long-form thinking with your product…This is not a cosmetic detail. Different models have different reasoning styles, failure modes, and "voices." When you change the underlying model mid-conversation without explicit consent, you change the epistemic ground I'm standing on while I'm trying to

---

[40] *Perplexity keeps silently downgrading to lower models despite explicit instructions*, REDDIT – R/PERPLEXITY_AI FORUM, https://www.reddit.com/r/perplexity_ai/comments/1po4ldf/perplexity_keeps_silently_downgrading_to_lower/ (last accessed May 30, 2026).

[41] *Is Perplexity actually using the models we select?*, REDDIT – R/PERPLEXITY_AI FORUM, https://www.reddit.com/r/perplexity_ai/comments/1oxp96m/is_perplexity_actually_using_the_models_we_select/ (last accessed May 30, 2026).

[42] *Perplexity defaulting to their shitty model after every single question is making me out of my mind*, REDDIT – R/PERPLEXITY_AI FORUM, https://www.reddit.com/r/perplexity_ai/comments/1s12f9j/perplexity_defaulting_to_their_shitty_model_after/ (last accessed May 30, 2026).

**CLASS ACTION COMPLAINT**

think, write, and design systems. That breaks continuity of reasoning and forces me into paranoid verification: I now have to constantly wonder whether the model label is real or whether you've quietly routed me somewhere else.[43]

54.    In every one of these instances, the LLM actually used by the Platform was cheaper and less powerful than the LLM selected by the user.

## D. PERPLEXITY'S FAILURES TO HONOR ITS PROMISES TO ITS USERS VIOLATE ITS TERMS OF SERVICE.

55.    Perplexity's Terms do not and have never provided any disclosure that Perplexity may make significant changes to the features available to its paid subscribers without notice.[44] On the contrary, Perplexity's Terms explicitly assure customers that "any price changes or changes to your subscription plan will take effect following reasonable notice to you."[45] Yet, in violation of its Terms, Perplexity did not provide **any** notice of the changes enacted through the Query Limits.

56.    Worse still, even now, five months after enacting the Query Limits, Perplexity still has not provided any explanation of these significant changes to its accountholders and continues to deny refund requests made by its customers due to the undisclosed enactment of the Query Limits.

57.    Likewise, Perplexity's Terms do not provide any notification to users that their model selections may be disregarded, let alone that Perplexity will falsely state that it is using a specified model when it is actually using another, less advanced model.

---

[43] *Perplexity is STILL DELIBERATELY SCAMMING AND REROUTING users to other models*, REDDIT – R/PERPLEXITY_AI FORUM, https://www.reddit.com/r/perplexity_ai/comments/1pjmkmj/perplexity_is_still_deliberately_scamming_and/ (last accessed May 30, 2026).

[44] *See generally, Perplexity Terms of Service*, PERPLEXITY, https://www.perplexity.ai/hub/legal/terms-of-service (last accessed May 30, 2026).

[45] *Id*. at ¶ 2.2.

**CLASS ACTION COMPLAINT**

## E. PERPLEXITY WAS ENRICHED BY ITS FAILURE TO PROVIDE ITS ADVERTISED PRODUCT FEATURES.

58.    Perplexity reaped a substantial financial benefit from its enactment of the Query Limits and disregard of users' model selections in at least three independent ways: (1) retaining the subscription payments made by Perplexity Pro users prior to enactment of the Query Limits, (2) reducing the Platform's operating costs, and (3) and collecting significant quantities of user data under false pretenses.

### i.  Perplexity Unjustly Retained Subscription Fees Paid by Its Users.

59.    Perplexity users pay for their subscriptions upfront on either a monthly or annual basis.[46]

60.    By failing to provide any notice prior to enacting the Query Limits, Perplexity collected payments from Perplexity Pro users who would have otherwise cancelled their accounts had they known that Perplexity would decimate the functionality of their account by enacting the Query Limits.

61.    Moreover, through Perplexity's continuing failure to provide documentation both as to the enactment of the Query Limits and the Platform's continued model re-routing, Perplexity deprives Platform users, including Plaintiffs and Class Members, of the information needed to understand that Perplexity has failed to provide the product features that they contracted to receive.

### ii.  Perplexity's Query Limits and Surreptitious Model Re-Routing Reduce Its Operating Costs.

62.    Perplexity additionally benefited from the conduct described herein through the reduction of its substantial Application Programming Interface ("API") costs.

63.    Unlike standard Perplexity searches processed by Perplexity's Sonar LLM, advanced search queries use expensive, cutting-edge LLMs produced by outside developers.

---

[46] *Choose Your Plan*, PERPLEXITY, https://www.perplexity.ai/pro (last accessed May 30, 2026).

**CLASS ACTION COMPLAINT**

64.     Perplexity incurs significant expense for the Platform's use of these advanced LLMs in the form of API costs: the fees charged by LLM manufacturers in exchange for allowing third-party software to route requests through their models.

65.     These API costs vary significantly between different models. For example, processing a user's query through Anthropic's Claude Opus LLM is **twenty-four times more expensive for Perplexity** than processing the same query through DeepSeek AI's LLM.[47] Of course, this cost difference is even more significant with regards to use of an outside LLM versus Perplexity's in-house Sonar LLM (which, as noted above, is far less advanced than the external models offered by Perplexity).[48]

66.     Thus, both by reducing the number of Advanced Search queries available to accountholders and re-routing some Advanced Search queries to less advanced models, Perplexity substantially reduced its API costs at the expense of Plaintiffs and the Class.

### iii.   The Data Collected from Platform Users is Crucial to Perplexity's Business Model.

67.     Perplexity admits that its users' searches are used to "train [its] AI."[49]

68.     LLM training involves exposing the AI software to "massive text collections, such as web pages, books, articles, and source code."[50] "Through many training iterations, the model develops a broad understanding of language without

---

[47] Carolyne Lyne, *LLM API Pricing Comparison in 2026*, CLOUDZERO, https://www.cloudzero.com/blog/llm-api-pricing-comparison/ (last accessed May 30, 2026).
[48] *See Comparison of Models*, ARTIFICIAL ANALYSIS, https://artificialanalysis.ai/ (last accessed May 30, 2026).
[49] *Choose Your Plan*, PERPLEXITY, https://www.perplexity.ai/pro (last accessed May 30, 2026).
[50] Jobit Varughese, *What is LLM training?*, IBM THINK, https://www.ibm.com/think/topics/llm-training (last accessed May 30, 2026).

**21**

**CLASS ACTION COMPLAINT**

relying on manually labeled data. It learns syntax, semantics, stylistic patterns, and implicit world knowledge encoded in the training data."[51]

69.    The datasets used to train LLMs are almost incomprehensibly large. For example, Common Crawl, one of the most widely used training databases, includes approximately 344.6 Tebibytes of text (equivalent to over 378,000 gigabytes) across 1.97-***billion*** pages.[52] Indeed, the sheer volume of data required to train an LLM is so large that researchers estimate that the ***entire stock of human-generated public text*** will be insufficient to train next-generation LLMs as early as 2028.[53]

70.    Moreover, unlike other LLMs, Perplexity is further restricted in the availability of suitable training data for its models. Because the Platform operates as a search engine rather than a general language model, data formatted in question-and-answer format is the key input for Perplexity's model training.[54] Accordingly, access to user queries is a vital resource for Perplexity's Platform development.

71.    By failing to notify users of the Platform's model re-routing, Perplexity prevented the exodus of users who would have left its service had they known that they were receiving an inferior product, thus maximizing its ability to harvest user data.

[51] *Id.*

[52] Open Data Science, *The Top 10 LLM Training Datasets for 2026*, MEDIUM (Apr. 9, 2026), https://odsc.medium.com/the-top-10-llm-training-datasets-for-2026-40578afa9f89 (last accessed June 11, 2026).

[53] Pablo Villalobos, Anson Ho, Jaime Sevilla, Tamay Besiroglu, Lennart Heim & Marius Hobbhahn, *Will we run out of data? Limits of LLM scaling based on human-generated data*, ARXIV (June 2024), https://arxiv.org/html/2211.04325v2, (last accessed June 11, 2026).

[54] *Advancing Search-Augmented Language Models*, PERPLEXITY RESEARCH (Apr. 22, 2026), https://research.perplexity.ai/articles/advancing-search-augmented-language-models (last accessed June 11, 2026).

**22**
**CLASS ACTION COMPLAINT**

## V.    CLASS ALLEGATIONS

72.    This action is brought by the named Plaintiffs on their behalf and on behalf of a proposed Class of all other persons similarly situated under Federal Rules of Civil Procedure 23(b)(2), 23(b)(3), and 23(c)(4).

73.    The Nationwide Class that Plaintiffs seek to represent is defined as follows:

**The Nationwide Class**

All natural persons who have registered for any Perplexity account other than the Perplexity "free plan."

74.    In addition to the claims asserted on behalf of the Nationwide Class, Plaintiffs assert claims on behalf of separate Illinois and Massachusetts Subclasses, which are defined are follows:

**Illinois Subclass**

All natural persons residing in Illinois who have registered for any Perplexity account other than the Perplexity "free plan."

**Massachusetts Subclass**

All natural persons residing in Massachusetts who have registered for any Perplexity account other than the Perplexity "free plan."

75.    The Nationwide Class and Illinois and Massachusetts Subclasses are collectively referred to herein as the "Class."  Excluded from the proposed Class are any claims for personal injury, wrongful death, or other property damage sustained by the Class; Perplexity's officers, directors, legal representatives, and assigns; and any Judge conducting any proceeding in this action and members of their immediate families.

**CLASS ACTION COMPLAINT**

76.    Plaintiffs reserve the right to amend the definitions of the Class or add subclasses if further information and discovery indicate that the definitions of the Class should be narrowed, expanded, or otherwise modified.

77.    **Numerosity.** The Class is so numerous that the individual joinder of all members is impracticable. There are tens of thousands of individuals that have been impacted by Perplexity's conduct. Moreover, the exact number of those impacted is generally ascertainable by appropriate discovery and is in the exclusive control of Perplexity.

78.    **Commonality.** Common questions of law or fact arising from Perplexity's conduct exist as to all members of the Class, which predominate over any questions affecting only individual Class Members. These common questions include, but are not limited to, the following:

a)    Whether Perplexity breached its contracts with Plaintiffs and Class Members;

b)    The terms of Perplexity's contracts with Plaintiffs and Class Members;

c)    Whether Perplexity engaged in false or misleading advertising;

d)    Whether Perplexity violated the statutes asserted as claims in this Complaint; and

e)    Whether Plaintiffs and Class Members are entitled to actual, consequential, and/or nominal damages as a result of Perplexity's wrongful conduct.

79.    **Typicality.** Plaintiffs' claims are typical of those of other Class Members because Perplexity deceived Plaintiffs and breached its agreements with Plaintiffs in the same manner and through the same conduct that deceived and breached its agreements with Class Members.

**CLASS ACTION COMPLAINT**

80. **Adequacy.** Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class in that Plaintiffs have no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the members of the Class and the infringement of the rights and the damages Plaintiffs have suffered are typical of other Class Members. Plaintiffs have also retained counsel experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.

81. **Predominance.** Defendant has engaged in a common course of conduct toward Plaintiffs and Class Members in that it deceived Plaintiffs and Class Members and failed to honor every agreement made with Plaintiffs and Class Members in the same manner. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

82. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claim is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

**CLASS ACTION COMPLAINT**

83. Defendant acted on grounds that apply generally to the Class as a whole so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

84. Likewise, particular issues under Fed. R. Civ. P. 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a) Whether Defendant owed a legal duty to Plaintiffs and the Class to honor the terms of its agreements with them, each of which is substantially similar in all material regards;

b) Whether Defendant breached a legal duty to Plaintiffs and Class Members by failing to honor the terms of its agreements;

c) Whether Defendant failed to comply with its own policies and Terms;

d) Whether Defendant adequately and accurately informed Plaintiffs and Class Members that it would unilaterally restrict their use of the Platform; and

e) Whether Plaintiffs and Class Members are entitled to actual, consequential, and/or nominal damages and/or injunctive relief as a result of Defendant's wrongful conduct.

85. Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the conduct described herein, and additionally maintains records of which LLM was used to compose the response to each and every user query.

**CLASS ACTION COMPLAINT**

## COUNT I
## BREACH OF CONTRACT
***(On Behalf of Plaintiffs and the Nationwide Class or, alternatively, the Illinois and Massachusetts Subclasses)***

86. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 85 as if fully set forth herein.

87. Plaintiffs and Class Members entered into contracts with Perplexity when they created their Perplexity accounts.

88. These contracts required that Perplexity (i) provide Plaintiffs and Class Members with access to its Advanced Search Tools, restricted only as disclosed when Plaintiffs and Class Members registered for their account; and (ii) to process the Advanced Search queries using the LLM selected by Plaintiffs and Class Members, including through Perplexity's description of the services provided to accountholders given at the time of account creation.

89. These contracts further required Perplexity to provide reasonable notice prior to making any changes to the Platform functionality provided to Plaintiffs and Class Members.

90. Plaintiffs and Class Members satisfied all of their obligations under their contracts with Perplexity.

91. Perplexity breached its contracts with Plaintiffs and Class Members by (i) unilaterally imposing significant reductions on Plaintiffs and Class Members' ability to use the Platform without providing any prior notice; and (ii) failing to provide the Platform features promised to Plaintiffs and Class Members, including by re-routing their queries to models other than the models selected by Plaintiffs and Class Members.

92. As a direct and proximate result of Perplexity's breaches, Plaintiffs and Class Members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

**CLASS ACTION COMPLAINT**

## COUNT II
## BREACH OF EXPRESS WARRANTY
***(On Behalf of Plaintiffs and the Nationwide Class or, alternatively, the Illinois and Massachusetts Subclasses)***

93.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 92 as if fully set forth herein.

94.    Perplexity, as the creator and provider of the Platform, issued material, written warranties that (i) it would not unilaterally impose significant reductions on Plaintiffs and Class Members' ability to use the Platform without providing any prior notice; (ii) would provide the Platform features promised to Plaintiffs and Class Members and (iii) Perplexity would provide reasonable notice prior to making any changes to the Platform features provided to Plaintiffs and Class Members.

95.    These warranties were part of the basis of the bargain and Plaintiffs and members of the class relied on these warranties.

96.    Perplexity breached the warranties made to Plaintiffs and the Class by (i) failing to provide the Platform features promised to Plaintiffs and Class Members, including by re-routing their queries to models other than the models selected by Plaintiffs and Class Members, and (ii) unilaterally imposing significant reductions on Plaintiffs and Class Members' ability to use the Platform without providing any prior notice.

97.    Plaintiffs and Class Members were injured as a direct and proximate result of Perplexity's breach, and this breach was a substantial factor in causing harm, because they (a) overpaid for the service because the service was sold at a price premium due to the warranty, and/or (b) did not receive the service as warranted that they were promised.

## COUNT III
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
***(On Behalf of Plaintiffs and the Nationwide Class or, alternatively, the Illinois and Massachusetts Subclasses)***

98.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 97 as if fully set forth herein.

**28**

**CLASS ACTION COMPLAINT**

99. Plaintiffs and Class Members contracted with Perplexity for the account benefits described herein.

100. Plaintiffs and Class Members fully performed their obligations under their contracts with Perplexity.

101. The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

102. Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

103. Perplexity materially breached the contracts it entered with Plaintiffs and Class Members by:

    a) Failing to adhere to the representations it made to Plaintiffs and Class Members about the services that it would provide;

    b) Failing to notify Plaintiffs and Class Members about the Query Limits or model re-routing; and

    c) failing to comply with the legal obligations necessarily incorporated into the agreements.

104. In these and other ways, Perplexity violated its duty of good faith and fair dealing.

105. Defendant's material breaches were the direct and proximate cause of Plaintiffs' and Class Members' injuries (as detailed *supra*).

**CLASS ACTION COMPLAINT**

## COUNT IV
## UNJUST ENRICHMENT
### (On Behalf of Plaintiffs and the Nationwide Class or, alternatively, the Illinois and Massachusetts Subclasses)

106.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 105 as if fully set forth herein.

107.   Plaintiffs plead this claim in the alternative to their breach of contract claim.

108.   As alleged herein, Perplexity's false and misleading advertising caused Plaintiffs and Class Members to pay for access to the Platform and to pay a price premium for Perplexity's services.

109.   Perplexity enriched itself by obtaining this direct and unjust benefit at Plaintiffs' and Class Members' expense.

110.   Under the principles of equity and good conscience, Perplexity should not be permitted to retain such benefits obtained by false and misleading conduct.

111.   As a direct and proximate result of Perplexity's conduct, Plaintiffs and Class Members have suffered and will continue to suffer injury.

112.   Perplexity should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class Members, proceeds that it unjustly received from them, or to refund the amounts that Plaintiffs and Class Members overpaid for Perplexity's services.

## COUNT V
## VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICES ACT ("ICFA")
### 815 ILCS 505/1, et seq.
### (On Behalf Plaintiff Gagleard and the Illinois Subclass)

113.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 112 as if fully set forth herein.

114.   Plaintiff Gagleard and Illinois Class Members are "consumers" as defined in 815 ILCS 505/1(e). Plaintiff Gagleard, Illinois Class Members, and Perplexity are "persons" as defined in 815 ILCS 505/1(c).

**30**

**CLASS ACTION COMPLAINT**

115. Perplexity engaged in "trade" or "commerce," including the provision of services, as defined under 815 ILCS 505/1(f). Perplexity engages in the sale of "merchandise" (including services) as defined by 815 ILCS 505/1(b) and (d).

116. Plaintiff Gagleard and Illinois Class Members purchased and received the Platform and other services from Perplexity for personal, family, or household purposes.

117. Perplexity engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment and omission of material facts in connection with the sale and advertisement of its services in violation of the ICFA, including:

    a) unilaterally imposing significant reductions on Plaintiff Gagleard and Illinois Subclass Members' ability to use the Platform without providing any prior notice; and

    b) failing to provide the Platform features promised to Plaintiff Gagleard and Illinois Subclass Members, including by re-routing their queries to models other than the models selected by Plaintiff Gagleard and Illinois Subclass Members.

118. These actions also constitute deceptive and unfair acts or practices because Perplexity failed to provide the features promised to Plaintiff Gagleard and Illinois Subclass Members, and further acted to conceal these failures from Plaintiff Gagleard and Illinois Subclass Members.

119. Perplexity intended that Plaintiff Gagleard and Illinois Subclass Members rely on its deceptive and unfair acts and practices and the concealment and omission of material facts in connection with Perplexity's offering of goods and services.

120. Perplexity's wrongful practices were and are injurious to the public because those practices were part of Perplexity's generalized course of conduct that

**CLASS ACTION COMPLAINT**

applied to the Class. Plaintiff Gagleard and Illinois Subclass Members have been adversely affected by Perplexity's conduct and the public was and is at risk as a result thereof.

121.   As a direct and proximate result of Perplexity's violations of the ICFA, Plaintiff Gagleard and Illinois Subclass Members have suffered harm, as alleged herein.

122.   Plaintiff Gagleard and Illinois Subclass Members seek actual and compensatory damages, injunctive relief, and court costs and attorneys' fees as a result of Perplexity's violations of the ICFA.

**COUNT VI**
**VIOLATIONS OF THE MASSACHUSETTS CONSUMER PROTECTION ACT ("MCPA")**
**Mass. Gen. Laws Ann. Ch. 93A, §§ 1, et seq.**
*(On Behalf Plaintiff Picardi and the Massachusetts Subclass)*

123.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 122 as if fully set forth herein.

124.   Perplexity, Plaintiff Picardi and the Massachusetts Subclass Members are "persons" as defined by Mass. Gen. Laws. Ann. Ch. 93A, § 1(a).

125.   Defendant operates in "trade or commerce" as meant by Mass. Gen. Law Ann. Ch. 93A, § 1(b).

126.   Perplexity advertised, offered, or sold goods or services in Massachusetts and engaged in trade or commerce directly or indirectly affecting the people of Massachusetts, as defined by Mass. Gen. Law Ann. Ch. 93A, § 1(b).

127.   Reasonable individuals would be misled by Perplexity's misrepresentations and/or omissions set forth above regarding the Platform because they would believe that Perplexity would honor its contractual obligations.

128.   Perplexity engaged in unfair methods of competition and unfair and deceptive acts and practices in the conduct of trade or commerce, in violation of the MCPA, including:

**CLASS ACTION COMPLAINT**

a) unilaterally imposing significant reductions on Plaintiff Picardi and the Massachusetts Subclass Members' ability to use the Platform without providing any prior notice; and

b) failing to provide the Platform features promised to Plaintiff Picardi and the Massachusetts Subclass Members, including by re-routing their queries to models other than the models selected by Plaintiff Picardi and the Massachusetts Subclass Members.

129. Perplexity's acts and practices were "unfair" because they fall within the scope of common law, statutory, and established concepts of unfairness, given that Perplexity solely held the true facts about its failure to provide the services that it agreed to provide to Plaintiff Picardi and the Massachusetts Subclass.

130. Consumers could not have reasonably avoided injury because Perplexity's business acts and practices unreasonably created or took advantage of an obstacle to the first exercise of consumer decision-making. By withholding important information from consumers, Perplexity created an asymmetry of information between it and consumers that precluded consumers from taking action to avoid or mitigate injury.

131. Perplexity's contractual breaches had no countervailing benefit to consumers or to competition.

132. Perplexity intended to mislead Plaintiff Picardi and Massachusetts Subclass Members and induce them to rely on its misrepresentations and omissions. Perplexity's representations and omissions were material because they were likely to deceive reasonable consumers about the features that Perplexity would provide to Platform accountholders.

133. Perplexity acted intentionally, knowingly, and maliciously to violate the MCPA and recklessly disregarded Plaintiff Picardi and the Massachusetts Subclass Members' rights.

**CLASS ACTION COMPLAINT**

134.   As a result, Plaintiff Picardi and the Massachusetts Subclass Members have been damaged in an amount to be proven at trial.

135.   On behalf of herself and other members of the Class, Plaintiff Picardi seeks to enjoin the unlawful acts and practices described herein, to recover actual damages, and reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and other Class Members, pray for judgment against Defendant as follows:

A.   an Order certifying the Nationwide Class and Illinois and Massachusetts Subclasses, and appointing the Plaintiffs and their Counsel to represent the Class;

B.   equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein;

C.   injunctive relief requested by Plaintiffs, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and Class Members;

D.   an award of all damages available at equity or law, including, but not limited to, actual, consequential, punitive, statutory and nominal damages, as allowed by law in an amount to be determined;

E.   an award of attorney fees, costs, and litigation expenses, as allowed by law;

F.   prejudgment interest on all amounts awarded, and

G.   all such other and further relief as this Court may deem just and proper.

**CLASS ACTION COMPLAINT**

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and other members of the proposed Class, hereby demand a jury trial on all issues so triable.

Dated: June 17, 2026

Respectfully submitted,

*/s/ Catherine Ybarra*
Catherine Ybarra (SBN 283360)
**SIRI & GLIMSTAD LLP**
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017
Tel: 213-297-3807
E: *cybarra@sirillp.com*

Sonjay C. Singh*
**SIRI & GLIMSTAD LLP**
400 East Pratt Street
8th Floor - #16946751
Baltimore, MD 21202
Tel: (212) 532-1091
E: *ssingh@sirillp.com*

Tyler J. Bean*
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: *tbean@sirillp.com*

Bryan L. Bleichner*
Philip J. Krzeski*
**CHESTNUT CAMBRONNE PA**
100 Washington Ave S, Suite 1700
Minneapolis, MN 55401
Tel : (612) 339-7300
*bbleichner@chestnutcambronne.com*
*pkrzeski@chestnutcambronne.com*

*pro hac vice admission anticipated

*Attorneys for Plaintiffs and the Class*

**35**

**CLASS ACTION COMPLAINT**